**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| TILLMAN ALLEN GREER LLC,<br><br>Plaintiff,<br><br>v<br><br>TOP RATED ONLINE, LLC,<br><br>Defendant. | Civil Action No. ______________<br><br>Demand For Jury Trial |

# COMPLAINT

Plaintiff Tillman Allen Greer, LLC, d/b/a Story Road ("Plaintiff"), by and through its undersigned counsel, brings this Complaint against Defendant Top Rated Online, LLC ("Defendant"), and alleges as follows:

## PARTIES

1. Plaintiff is a Georgia limited liability company with its principal place of business at 25 E. Main Street, Buford, Georgia 30518. Plaintiff does business as Story Road and owns and operates regional publications and associated award programs.

2. Upon information and belief, Defendant is a Michigan limited liability company with its principal place of business in Ann Arbor, Michigan.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Lanham Act, 15 U.S.C. § 1051 et seq., and the Copyright Act, 17 U.S.C. § 101 et seq.

4. This Court has jurisdiction over Plaintiff's related unfair competition claims under 28 U.S.C. § 1338(b) and supplemental jurisdiction under 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy.

5. This Court has personal jurisdiction over Defendant because Defendant is organized under Michigan law, maintains its principal place of business in this District, and has committed the acts complained of from and within Michigan.

6. Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c) and 1400(a) because Defendant resides in this District and a substantial part of the events giving rise to Plaintiff's claims occurred here.

## GENERAL ALLEGATIONS

### *A. Plaintiff's Publications, Award Programs, and Plaque Business*

7. Plaintiff publishes regional magazines, journals, guides, business directories, websites, and related digital content under such names as

Georgia Business Journal, Gwinnett Magazine, Guide to South Carolina, Guide to Florida, and Guide to Kentucky.

8. Through those publications, Plaintiff operates established award programs, including Best of Georgia, Best of Gwinnett, Best of South Carolina, Best of Florida, and Best of Kentucky.

9. Plaintiff identifies, evaluates, selects, and publishes award recipients through editorial and administrative processes developed for its publications and programs.

10. Plaintiff invests substantial time and resources in developing its publications, award programs, recipient lists, artwork, websites, email campaigns, and relationships with participating businesses.

11. Plaintiff sells official promotional packages to award recipients. Depending on the program and package, Plaintiff's offerings include physical plaques, digital-art and decal kits, annual licenses, print advertisements, newsletter and social-media promotion, and other marketing services. Those offerings are an important part of Plaintiff's business and bear Plaintiff's publication names, award-program names, and distinctive award branding.

12. Award recipients and the public associate Plaintiff's publication names, award-program names, and award graphics with Plaintiff as the source,

sponsor, and administrator of the programs and with products authorized by Plaintiff.

***B. Plaintiff's Marks***

13. Plaintiff owns the following federal registrations for marks used in its publications, award programs, promotional services, and official plaques (collectively, the "Registered Marks").

14. Plaintiff's Gwinnett registrations are:

(a) BEST OF GWINNETT, a standard-character mark, Serial No. 86/954,968 and Registration No. 5,253,787, registered Aug 1, 2017 on the Principal Register. The registration is active, and Plaintiff's combined Sections 8 and 15 declaration has been accepted and acknowledged. It covers Class 16 magazines in the field of business, lifestyle, and people in the Gwinnett County region, and Class 41 online journals in the nature of blogs and websites featuring non-downloadable regional and city magazines in those fields.

(b) GWINNETT MAGAZINE, a standard-character mark, Serial No. 87/960,273 and Registration No. 5,738,098, registered Apr 30, 2019 on the Principal Register. The registration is active, and Plaintiff's Section 8 declaration has been accepted. It covers Class 16 magazines featuring business, lifestyle, and people in the Gwinnett County region and Class

41 online magazines in those fields. "MAGAZINE" is disclaimed apart from the mark as shown.

(c) GUIDE TO GWINNETT, a standard-character mark, Serial No. 88/027,079 and Registration No. 5,738,198, registered Apr 30, 2019 on the Principal Register. The registration is active, and Plaintiff's Section 8 declaration has been accepted. It covers Class 16 directories, guidebooks, and printed guides featuring businesses, services, arts, and entertainment in Gwinnett County and Class 35 services providing a searchable online advertising website and informational guide featuring the goods and services of Gwinnett County vendors. "GUIDE" is disclaimed apart from the mark as shown.

(d) #LOVEGWINNETT, a standard-character mark, Serial No. 87/397,863 and Registration No. 5,514,830, registered Jul 10, 2018 on the Principal Register. The registration is active, and Plaintiff's combined Sections 8 and 15 declaration has been accepted and acknowledged. It covers Class 16 magazines and newsletters featuring the Gwinnett County, Georgia region.

(e) The composite GWINNETT MAGAZINE / BEST OF GWINNETT 20XX / #LOVEGWINNETT / BESTOFGWINNETT.COM plaque-design mark, Serial No. 98/353,363 and Registration No. 7,619,909,

registered Dec 24, 2024 on the Principal Register. It covers Class 20 plaques of coated wood or wood-based board. The registered color design consists of concentric gray, dark-gray, and white circles surrounding a blue and light-blue starburst, a white outline of Gwinnett County within a red pentagon, and the foregoing literal elements; "MAGAZINE" and the county outline are disclaimed apart from the mark as shown.




*Registered Gwinnett Plaque Design — Reg. No. 7,619,909*

15. Plaintiff's Georgia registrations are:

(a) BEST OF GEORGIA, a standard-character mark, Serial No. 90/614,811 and Registration No. 6,708,827, registered Apr 19, 2022 on the Supplemental Register. It covers Class 16 printed directories and magazines concerning people, places, goods, services, restaurants, entertainment, arts, sports, and recreation in Georgia; Class 35 promotion of others through business surveys featuring consumer

preferences and recommendations in those fields; and Class 41 online reports featuring the survey results.

(b) GEORGIA BUSINESS JOURNAL, a standard-character mark, Serial No. 87/375,329 and Registration No. 5,488,412, registered Jun 5, 2018 on the Supplemental Register. The registration is active, and Plaintiff's Section 8 declaration has been accepted. It covers Class 41 online magazines and non-downloadable journals in the field of business. "BUSINESS JOURNAL" is disclaimed apart from the mark as shown.

(c) The GBJ design mark, Serial No. 97/132,792 and Registration No. 6,934,492, registered Dec 27, 2022 on the Principal Register. It covers Class 41 online magazines in the field of business and consists of the letters "GBJ" accompanied by a partial outline of a peach.

*Registered GBJ Design — Reg. No. 6,934,492*

(d) The composite GEORGIA BUSINESS JOURNAL / BEST OF GEORGIA 20XX / #LOVEGEORGIA / BESTOFGEORGIA.COM plaque-design mark, Serial No. 98/353,357 and Registration No. 7,585,609, registered Dec 3, 2024 on the Principal Register. It covers

Class 20 plaques of coated wood or wood-based board. The registered color design consists of concentric gray, dark-gray, and white circles surrounding a blue and light-blue starburst, a white outline of Georgia within a red pentagon, and the foregoing literal elements; "BEST OF GEORGIA," "GEORGIA BUSINESS JOURNAL," and the state outline are disclaimed apart from the mark as shown.

*Registered Georgia Plaque Design — Reg. No. 7,585,609*

16. Plaintiff's Florida registrations are:

(a) BEST OF FLORIDA, a standard-character mark, Serial No. 97/608,863 and Registration No. 7,403,751, registered May 28, 2024 on the Supplemental Register. It covers Class 16 printed directories and annual guides featuring survey results concerning people, places, goods, services, restaurants, entertainment, arts, sports, and recreation in Florida; Class 35 promotion of others through business surveys featuring consumer preferences and recommendations in those fields; and Class 41 online reports featuring the survey results.

(b) The composite GUIDE TO FLORIDA / BEST OF FLORIDA 20XX / #LOVEFLORIDA / GUIDETOFLORIDA.COM plaque-design mark, Serial No. 98/353,362 and Registration No. 7,585,610, registered Dec 3, 2024 on the Principal Register. It covers Class 20 plaques of coated wood or wood-based board. The registered color design consists of concentric gray, dark-gray, and white circles surrounding a blue and light-blue starburst, a white outline of Florida within a red pentagon, and the foregoing literal elements; "GUIDE TO FLORIDA," "BEST OF FLORIDA," and the state outline are disclaimed apart from the mark as shown.




*Registered Florida Plaque Design — Reg. No. 7,585,610*

17. Plaintiff's South Carolina registrations are:

(a) BEST OF SOUTH CAROLINA, a standard-character mark, Serial No. 99/351,861 and Registration No. 8,139,329, registered Feb 10, 2026 on the Supplemental Register. It covers Class 16 printed directories and magazines concerning people, places, goods, services, restaurants,

entertainment, arts, sports, and recreation in South Carolina; Class 35 conducting business surveys and promoting others through surveys featuring consumer preferences and recommendations in those fields; and Class 41 online reports featuring the survey results.

(b) The composite GUIDE TO SOUTH CAROLINA / BEST OF SOUTH CAROLINA 20XX / GUIDETOSOUTHCAROLINA.COM plaque-design mark, Serial No. 99/397,996 and Registration No. 8,291,302 (the "South Carolina Plaque Mark"), registered Jun 9, 2026 on the Principal Register. It covers Class 20 plaques of coated wood or wood-based board. The registered color design consists of concentric gray, dark-gray, and white circles surrounding a blue and light-blue starburst, a white outline of South Carolina within a red pentagon, and the foregoing literal elements; the state design and the wording "GUIDE TO SOUTH CAROLINA," "BEST OF SOUTH CAROLINA 20XX," and "GUIDETOSOUTHCAROLINA.COM" are disclaimed apart from the mark as shown.

*Registered South Carolina Plaque Mark — Reg. No. 8,291,302*

18. The Registered Marks are valid and subsisting. Plaintiff has continuously used them in interstate commerce for the registered goods and services. The Principal Register registrations are entitled to the statutory presumptions and other benefits applicable to such registrations; the BEST OF GWINNETT and #LOVEGWINNETT registrations are incontestable to the extent provided by 15 U.S.C. § 1065. Plaintiff pleads the Supplemental Register registrations together with its continuous use, promotion, goodwill, and acquired source significance. Under 15 U.S.C. § 1056(b), the disclaimers identified above do not prejudice Plaintiff's existing or later-arising rights in the disclaimed matter or in the registered composite marks as a whole.

19. Plaintiff also owns common-law rights in the following publication, award-program, hashtag, and domain-name marks:

   (a) GUIDE TO FLORIDA, which Plaintiff has used since at least 2022 as the name of its statewide Florida publication and business guide, in connection with online and print content, directories, award administration, recipient pages, promotion, and official Best of Florida products.

(b) GUIDE TO SOUTH CAROLINA, which Plaintiff has used since at least 2024 as the name of its statewide South Carolina publication and business guide, in connection with online and print content, directories, award administration, recipient pages, promotion, and official Best of South Carolina products.

(c) BEST OF KENTUCKY, which Plaintiff has used since at least 2026 for its statewide Kentucky awards program, including voting, selection and publication of winners, recipient pages, a print annual, campaign materials, licensing, and official award products.

(d) GUIDE TO KENTUCKY, which Plaintiff has used since at least 2026 as the name of its statewide Kentucky publication and business guide, in connection with directories, editorial content, award administration, recipient pages, promotion, and official Best of Kentucky products.

(e) #LOVEGEORGIA, which Plaintiff has used since at least 2022 on and in connection with its Best of Georgia seals, plaques, digital award art, recipient materials, and promotion.

(f) BESTOFGEORGIA.COM, which Plaintiff has used since at least 2022 on and in connection with its Best of Georgia seals, plaques, recipient materials, promotion, and online destination for the program.

20. Through Plaintiff's continuous use, statewide and regional promotion, publications, voting and award-administration activities, sales, licensing, recipient relationships, and substantial investment, the common-law marks identified above have acquired goodwill and source-identifying significance among award recipients, participating businesses, readers, and consumers in their respective markets. Together with the Registered Marks, they are referred to as the "Plaintiff Marks."

***C. Plaintiff's Copyrighted South Carolina Work***

21. On June 25, 2026, Plaintiff published the online edition of its 2026 Best of South Carolina results, including program pages, category pages, and over one thousand individual recipient pages (the "South Carolina Work").

22. Plaintiff owns U.S. Copyright Registration No. TX 9-624-824, effective July 28, 2026, for the work titled 2026 Best of South Carolina Results - June 25, 2026 Online Edition.

23. The registration identifies as new material Plaintiff's text, artwork, and selection, coordination, and arrangement of text and artwork first published on June 25, 2026.

24. The newly published material includes original text and artwork on the results, category, and over one thousand recipient pages, together with

Plaintiff's original selection of recipients and its coordination and arrangement of those recipients by category and award level.

25. The registration excludes previously published website content and artwork and identified third-party material. Plaintiff owns the copyright in the protected new material and has never licensed or authorized Defendant to reproduce, display, distribute, or use that protected material.

***D. Defendant's Competing Plaque Campaigns***

26. Defendant operates a competing business that solicits award recipients and sells custom display plaques. At least some of Defendant's current offers include a digital award graphic with a plaque order.

27. Defendant organizes its solicitations through recipient-specific emails, campaign landing pages, and plaque mockups at awards.topratedaward.com. The pages name the award program and publication and display an individualized plaque for the recipient.

28. Defendant has created recipient-facing campaigns directed to Plaintiff's award programs and award recipients.

29. The Greer-related campaigns include campaign 0013 for 2026 Best of South Carolina and Guide to South Carolina; campaign 0019 for 2026 Best of Kentucky and The Guide to Kentucky; campaign 0107 for 2025 Best of

Georgia and Georgia Business Journal; and campaign 0125 for 2025 Best of Gwinnett and Gwinnett Magazine.

30. Defendant uses Plaintiff's published award lists and recipient pages to identify and contact the same businesses to which Plaintiff markets its official plaques and award packages.

31. Defendant is not affiliated with Plaintiff and has never been authorized to administer Plaintiff's programs, contact Plaintiff's recipients on Plaintiff's behalf, use the Plaintiff Marks, copy protected elements of the South Carolina Work, or sell official products for Plaintiff's programs.

***E. Defendant's 2022–2024 Infringement and Notice***

32. In early 2023, Plaintiff learned that Defendant was soliciting Plaintiff's award recipients and selling plaques that prominently displayed Plaintiff's 2022 Best of Georgia award seal, including the BEST OF GEORGIA and GEORGIA BUSINESS JOURNAL marks, Plaintiff's #LOVEGEORGIA branding, and Plaintiff's BESTOFGEORGIA.COM branding. Those plaques reproduced Plaintiff's award branding as the dominant display. A small disclaimer placed at the bottom of Defendant's materials did not dispel the source, sponsorship, affiliation, or authorization conveyed by the reproduced marks and artwork.




Figure 1. Defendant-supplied 2022 Best of Georgia plaque for Kizzy's Kakes, displaying Plaintiff's BEST OF GEORGIA, GEORGIA BUSINESS JOURNAL, #LOVEGEORGIA, and BESTOFGEORGIA.COM branding.

33. On February 23, 2023, Southern Roofing & Exteriors contacted Plaintiff through Plaintiff's Best of Georgia channel after receiving a Defendant-supplied plaque and asked, "Our plaque has been received but it is wrong, whom do I contact about this?" Although Southern Roofing is a roofing company, Defendant's plaque used Plaintiff's 2022 Best of Georgia branding and identified Southern Roofing as "BEST PEDIATRIC

PRACTICE." The recipient's request that Plaintiff correct Defendant's plaque is direct evidence of actual source and affiliation confusion. Southern Roofing also posted the misprinted Defendant plaque publicly on Facebook, announced its Best of Georgia award, and explained that the plaque contained "a funny mistake." The post drew public reactions and comments. Because the prominent Plaintiff Marks made the error appear connected to Plaintiff, Plaintiff asked the recipient to remove the post because it was harming Plaintiff's reputation.



Figure 2. Defendant-supplied 2022 Best of Georgia plaque for Southern Roofing & Exteriors, displaying "BEST PEDIATRIC PRACTICE."

34. Defendant also used telephone solicitations that referred to Plaintiff's awards and stated, in substance, that Defendant was calling "regarding Best of Gwinnett awards" and that "we are producing the award plaque for you to display."

35. In March 2023, a Best of Gwinnett recipient contacted Plaintiff after receiving Defendant's telephone solicitation because the recipient believed the call concerned Plaintiff and Plaintiff's award program.

36. On March 23, 2023, Plaintiff's counsel sent Defendant a detailed cease-and-desist letter identifying Plaintiff's rights, Defendant's unauthorized plaque sales, the confusing nature of Defendant's solicitations, and Defendant's use of Plaintiff's marks and copyrighted artwork.

37. Defendant did not substantively respond to the March 23, 2023, letter or to Plaintiff's April 24, 2023, follow-up.

38. In November 2023, after a telephone solicitation, Defendant emailed Ultimate Hydration, a Plaintiff award recipient, stating "Congratulations on your feature as one of the Best of this year" and "Per your order, we will be shipping the plaque."

39. The recipient reported that Defendant's caller was pushy and that the recipient believed the caller was affiliated with Plaintiff. The incident threatened Plaintiff's reputation and its relationship with the recipient.

40. In January 2024, another recipient that was awaiting delivery of an official plaque from Plaintiff received a call from Defendant stating, in substance, "We're making your Best of Georgia plaque."

41. On February 7, 2024, Plaintiff's counsel sent Defendant a final demand letter that again identified the infringement and confusion. The letter was hand-delivered to Defendant on February 12, 2024.

42. Defendant did not substantively respond to the February 7, 2024, letter.

43. Defendant thus had actual and repeated notice, no later than March 2023 and again in February 2024, of Plaintiff's ownership claims, the unauthorized nature of Defendant's conduct, and the actual confusion Defendant's sales practices were causing.

***F. Defendant's Renewed and Expanded 2026 Infringement***

44. No later than May 2026, despite Plaintiff's prior demands, Defendant had renewed and expanded its campaigns targeting Plaintiff's awards programs.

45. On May 4, 2026, Defendant emailed Reed Financial Group with a subject line invoking Plaintiff's 2025 Best of Gwinnett program while Defendant's

personalized plaque mockups displayed Plaintiff's GEORGIA BUSINESS JOURNAL and BEST OF GEORGIA marks. Defendant offered two plaque sizes for $159 to $219. Reed promptly forwarded the solicitation to Plaintiff, stating, "This appears to be fraudulent but I wanted to pass it along so you are aware."

46. On May 27, 2026, Defendant sent similar email solicitations to multiple Best of Georgia recipients, including Sage Cottage, Rosie's Hometown Meats, and InsurancePM.com. The May 27 solicitations prominently identified the 2025 Best of Georgia program and used header artwork reading GEORGIA BUSINESS JOURNAL and BEST OF GEORGIA. Defendant used Plaintiff's underlying word marks even when it substituted a seal design of its own making.

47. Defendant's recipient-facing pages identify the campaign as "2025 Best of Georgia" and identify Georgia Business Journal as the giver of the award.

48. Plaintiff published the South Carolina Work and announced the 2026 Best of South Carolina results on June 25, 2026.

49. Within weeks, Defendant sent email solicitations to Plaintiff's South Carolina recipients. Examples reported to Plaintiff included J&K Home Furnishings, Impactful Home Inspections, Anchored Impressions, Bk

Esthetics, and Signature Transportation; these businesses are examples, not the full universe of recipients contacted.

50. The South Carolina emails and plaque mockups prominently reproduced Plaintiff's federally registered South Carolina Plaque Mark and offered plaques priced at approximately $159 or $219. Defendant's offer stated that a "Digital Award Graphic" was included with the order.




Figure 3. Defendant's 2026 Best of South Carolina plaque mockup for Anchored Impressions, reproducing Plaintiff's federally registered South Carolina Plaque Mark.

51. Defendant's recipient-facing campaign materials identify the campaign as "2026 Best of South Carolina" and identify Guide to South Carolina as the giver of the award.

52. The near-immediate timing, Defendant's access to the newly published South Carolina Work, and its creation of recipient-specific campaign records, emails, and mockups support the inference that Defendant copied from the Work. On information and belief, Defendant copied protected new expression and elements of Plaintiff's original selection, coordination, and arrangement of recipients, categories, award levels, text, and artwork into its parallel campaign materials.

53. By August 25, 2026, Palm Trees LTD, a Best of South Carolina recipient, informed Plaintiff that it had purchased a South Carolina plaque from Defendant and supplied a photograph of the physical plaque. The plaque reproduced Plaintiff's South Carolina Plaque Mark, including GUIDE TO SOUTH CAROLINA, BEST OF SOUTH CAROLINA 2026, and GUIDETOSOUTHCAROLINA.COM, confirming an actual Defendant sale of a physical product bearing the mark.




Figure 4. Defendant's 2026 Best of South Carolina plaque for Palm Trees LTD, reproducing Plaintiff's federally registered South Carolina Plaque Mark.

54. Defendant also targeted Plaintiff's Kentucky program. On August 18, 2026, Defendant solicited Louisville Coating in connection with the 2026 Best of Kentucky program and used Plaintiff's BEST OF KENTUCKY and GUIDE TO KENTUCKY branding in the solicitation and plaque presentation.

55. Defendant's recipient-facing campaign materials identify the Kentucky campaign as "2026 Best of Kentucky" and identify The Guide to Kentucky as the giver of the award.

56. Plaintiff announced the 2026 Best of Florida results on August 27, 2026. Defendant began soliciting Plaintiff's Florida recipients immediately thereafter.

57. On September 1, 2026, Lueur Aesthetics, a Best of Florida recipient that had already purchased an official plaque from Plaintiff and was awaiting delivery, reported receiving a call asking about plaque sizing. Lueur Aesthetics treated the call as part of its existing transaction with Plaintiff, apologized for supposedly missing Plaintiff's email, and attempted twice to return the call.

58. Lueur Aesthetics supplied the call-back number and reported that the caller referred her to "Carl, the director." Plaintiff confirmed that the call did not originate from Plaintiff. Upon information and belief, Defendant placed the call as part of its Florida solicitation campaign. Lueur's response is further evidence of actual confusion caused by Defendant's method of selling plaque products to Plaintiff's recipients.

59. On September 22, 2026, Defendant sent a follow-up solicitation to Best of Gwinnett recipient Reed Financial Group and a separate solicitation to

Best of Gwinnett recipient Long Arms Quilting. Both depicted plaque mockups with a Defendant-created seal that prominently displayed GWINNETT MAGAZINE and BEST OF GWINNETT. Reed again forwarded Defendant's solicitation to Plaintiff, stating, "this looks like a scam." Within minutes of receiving Defendant's email, Long Arms Quilting's owner forwarded it to Plaintiff and asked, "Is this the one you sent, or is this someone else? It looks different." The inquiry is direct evidence of actual confusion as to source, sponsorship, affiliation, and authorization.




Figure 5. Defendant's 2025 Best of Gwinnett plaque mockup for Long Arms Quilting, using Defendant-created seal artwork bearing GWINNETT MAGAZINE and BEST OF GWINNETT.

60. Defendant's recipient-facing campaign materials identify the campaign as "2025 Best of Gwinnett" and identify Gwinnett Magazine as the giver of the award.

61. Defendant's substitution of its own graphic layout for some campaigns does not cure its unauthorized use of Plaintiff's publication and award-program marks or the false impression that Defendant is authorized by, affiliated with, or acting for Plaintiff. Nor does any small-print disclaimer cure that impression: Defendant's prominent use of the Plaintiff Marks, recipient-specific award information, plaque mockups, and telephone representations overwhelms any disclaimer and creates initial-interest, point-of-sale, affiliation, and sponsorship confusion.

62. On September 30, 2026, after Plaintiff sent Best of Florida recipient RST Computer Services, Inc. an email offering Plaintiff's official plaque, RST replied, "I ordered this yesterday. Why do I still get emails to order it?" Plaintiff could locate no order for RST in its system. RST then supplied a receipt showing that, on September 29, it had paid Defendant $177.50 for a "Custom Award Plaque" under Defendant Order No. 1291. RST's response shows that it believed its Defendant purchase was an order from, or fulfilled on behalf of, Plaintiff. The transaction is direct evidence of actual confusion and an actual sale diverted to Defendant.

63. Plaintiff has identified actual Defendant plaque sales to Palm Trees LTD and RST Computer Services, as well as repeated instances in which recipients sought Plaintiff's help or clarification concerning Defendant's products and solicitations. Plaintiff and Defendant directly compete to sell plaques and digital award graphics to the same award recipients through overlapping channels at the same time. Defendant's unauthorized campaigns therefore divert plaque and award-package sales from Plaintiff, impose costs to investigate and correct recipient confusion, and impair Plaintiff's control over its marks, protected expression, reputation, and recipient relationships.

64. Defendant's decision to resume and expand the challenged conduct after receiving Plaintiff's 2023 and 2024 demand letters was knowing, intentional, and willful.

**COUNT I**
**Federal Trademark Infringement and Counterfeiting**
**(15 U.S.C. § 1114(1))**

65. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

66. Plaintiff owns the Registered Marks and the goodwill symbolized by them.

67. Defendant used reproductions, counterfeits, copies, and colorable imitations of one or more of the Registered Marks in commerce in

connection with the advertising, offering for sale, and sale of plaques and bundled digital award graphics.

68. Defendant's uses were without Plaintiff's consent and were likely to cause confusion, mistake, or deception as to source, sponsorship, affiliation, approval, or authorization.

69. Defendant's reproduction of the South Carolina Plaque Mark on competing plaque mockups and offered plaques constitutes use of a counterfeit mark within the meaning of the Lanham Act or, at minimum, use of a reproduction, copy, or colorable imitation of Plaintiff's registered mark.

70. Defendant acted knowingly and willfully, including because it resumed the challenged conduct after receiving Plaintiff's detailed 2023 and 2024 demand letters.

71. As a direct and proximate result, Plaintiff has suffered and will continue to suffer lost sales, diverted revenue, loss of control over its marks and reputation, injury to goodwill, and other damages in an amount to be proven at trial.

72. Plaintiff is entitled to injunctive relief and the monetary and equitable remedies available under 15 U.S.C. §§ 1116, 1117, and 1118.

## COUNT II
## False Designation of Origin and Unfair Competition
## (15 U.S.C. § 1125(a)(1)(A))

73. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

74. The Plaintiff Marks identify Plaintiff's publications, award programs, official award products, and related services and embody valuable goodwill belonging to Plaintiff.

75. In commercial advertising, promotion, offers, and sales, Defendant used the Plaintiff Marks and recipient-specific award information in a manner that falsely or misleadingly represented Defendant's affiliation, connection, or association with Plaintiff and the origin, sponsorship, approval, or authorization of Defendant's goods and services.

76. Defendant's conduct was likely to cause confusion and actually caused recipients to believe that Defendant was Plaintiff, was acting for Plaintiff, or was handling an existing or authorized plaque order.

77. Defendant's conduct constitutes false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

78. Defendant acted knowingly, intentionally, and willfully and has profited from the challenged conduct.

79. As a direct and proximate result, Plaintiff has suffered and will continue to suffer irreparable harm, lost sales, diverted revenue, reputational injury, loss of control over its goodwill, and other damages.

80. Plaintiff is entitled to the remedies available under 15 U.S.C. §§ 1116, 1117, and 1118.

**COUNT III**
**Copyright Infringement**
**(17 U.S.C. § 501)**

81. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

82. Plaintiff owns U.S. Copyright Registration No. TX 9-624-824 for the South Carolina Work and has complied with the prerequisites to suit.

83. The South Carolina Work contains copyrightable new text and artwork and an original selection, coordination, and arrangement of text and artwork, including the selection and organization of 1,519 recipient pages by category and award level.

84. Defendant had access to the South Carolina Work through Plaintiff's public June 25, 2026 publication and recipient pages.

85. Without authorization, and on information and belief, Defendant reproduced protected elements of the South Carolina Work in its parallel recipient campaign records and individualized solicitations, including

protected new expression and elements of Plaintiff's original selection, coordination, and arrangement.

86. Plaintiff's copyright claim does not rest on previously published artwork, the preexisting seal standing alone, recipient names, award facts, or other unprotectable material. It rests on Defendant's copying of protected new text and artwork and protectable elements of Plaintiff's original selection, coordination, and arrangement.

87. Defendant's unauthorized reproduction and display violated Plaintiff's exclusive rights under 17 U.S.C. § 106 and constitutes infringement under 17 U.S.C. § 501.

88. Defendant's infringement was knowing and willful, including because Defendant had received repeated notice that Plaintiff owned and objected to copying of its award artwork.

89. Because Plaintiff's registration became effective within three months after first publication, Plaintiff is entitled to elect statutory damages, including enhanced damages for willful infringement, and to recover its attorneys' fees and costs under 17 U.S.C. §§ 412, 504, and 505.

90. Plaintiff is also entitled to injunctive relief and appropriate impoundment or disposition under 17 U.S.C. §§ 502 and 503.

## COUNT IV
## Michigan Common-Law Trademark Infringement and Unfair Competition

91. Plaintiff repeats and realleges the foregoing paragraphs as though fully set forth herein.

92. Plaintiff owns protectable common-law rights and goodwill in the Plaintiff Marks, including GUIDE TO FLORIDA, GUIDE TO SOUTH CAROLINA, BEST OF KENTUCKY, GUIDE TO KENTUCKY, #LOVEGEORGIA, and BESTOFGEORGIA.COM.

93. Defendant used the Plaintiff Marks without Plaintiff's permission in connection with directly competing plaques and bundled digital award graphics.

94. Defendant's conduct was likely to cause, and did cause, confusion as to source, sponsorship, affiliation, approval, and authorization and enabled Defendant to trade on Plaintiff's goodwill.

95. Defendant's conduct constitutes trademark infringement and unfair competition under Michigan common law.

96. Defendant acted knowingly, intentionally, and willfully.

97. As a direct and proximate result, Plaintiff has suffered and will continue to suffer irreparable harm, lost sales, diverted revenue, injury to goodwill, and other damages.

98. Plaintiff is entitled to injunctive, monetary, and equitable relief under Michigan law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendant and grant the following relief:

A. A preliminary and permanent injunction prohibiting Defendant and all persons acting in concert with it from using the Plaintiff Marks or any confusingly similar designation in connection with Plaintiff's award programs or with plaques, digital graphics, or related goods and services;

B. A preliminary and permanent injunction prohibiting Defendant from reproducing, displaying, distributing, or otherwise exploiting protected new text, artwork, selection, coordination, arrangement, or other protectable expression from the South Carolina Work;

C. An award of Defendant's profits, Plaintiff's damages, costs of the action, enhanced damages for willful infringement, and reasonable attorneys' fees under 15 U.S.C. § 1117, or, at Plaintiff's election, statutory damages for use of counterfeit marks under 15 U.S.C. § 1117(c);

D. An award of Plaintiff's actual damages and Defendant's profits attributable to copyright infringement, or, at Plaintiff's election, statutory damages,

including enhanced statutory damages for willful infringement, under 17 U.S.C. § 504;

E. Plaintiff's reasonable attorneys' fees and costs under 17 U.S.C. § 505 and all other applicable law;

F. An accounting of Defendant's revenues, sales, profits, customers, and campaigns associated with the challenged conduct;

G. An order under 15 U.S.C. § 1118 and 17 U.S.C. § 503 requiring the destruction, impoundment, recall, or other appropriate disposition of infringing plaques, graphics, mockups, advertisements, electronic files, and related materials;

H. Corrective advertising or notice sufficient to remedy confusion among recipients contacted through Defendant's campaigns;

I. Prejudgment and post-judgment interest as permitted by law; and

J. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 23, 2026

**PANAGOS KENNEDY PLLC**

By: /s/ Linda D. Kennedy
Linda D. Kennedy
Bill C. Panagos
3155 West Big Beaver Road, Suite 119
Troy, Michigan 48084
lkennedy@paniplaw.com
248-564-1343

Counsel for Plaintiff Tillman Allen Greer, LLC